UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

DEL VAL MEDIA, LLC,

           Plaintiff,

v.

CHRISTINA PERROTTA AND
THE HOME MAG PHILADELPHIA,

           Defendants.

C.A. No. _____

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff, Del Val Media, LLC, by way of Verified Complaint against Defendants Christina Perrotta and TheHomeMag Philadelphia, hereby alleges the following:

### NATURE OF THE ACTION

1.      Del Val Media publishes several well established and branded online and print magazines in the Delaware Valley, including House & Home, Suburban Life, Philadelphia Life, Princeton Life, Suburban Family, South Jersey Biz, Philly Biz, The Art of Living Well, South Jersey Magazine, and SouthJersey.com. Central to Del Val Media's success is its relationships with its advertisers and the confidential information it has, over many years and at great expense, developed regarding its clients, including but not limited to: detailed and intimate data for both current and prospective clients' contact information that includes names, office phone numbers, emails, personal cell phone numbers, best times and places to contact, client profile information on marketing strategies, budgets available both past and future, seasonality and buying preferences, geographical target markets desired, ad copy and design preferences both past and future, prior ad campaigns results and performance feedback, specific and confidential pricing

strategies and contract information, payment history,   and advertising agency contacts and the specific details on these agreements between the client and advertising agency representing them.

2.      Defendant Perrotta was considered a key sales executive and top revenue leader at Del Val Media, with full and complete access to this confidential information, as she needed such access to fulfill her job responsibilities with Del Val Media.

3.      To protect its confidential information, among other things, Del Val Media required Defendant Perrotta to sign a confidentiality and non-compete agreement, for which she was specifically compensated.  Perrotta gladly accepted her additional compensation and agreed to and signed her confidentiality and non-compete agreement.

4.      After working with Del Val Media for three years, Defendant Perrotta voluntarily quit her job and immediately jumped to a direct competitor of Del Val Media, a company by the name of TheHomeMag Philadelphia ("THM"), doing the very same job and pursuing the very same clients of Del Val Media.  Perrotta substantially, knowingly, and unapologetically violated her confidentiality and non-compete agreement.

5.      Perrotta's new employer, THM, became aware of Perrotta's non-compete agreement before she started working there, but THM decided to employ her nevertheless, thus tortiously interfering with Del Val Media's agreement with Perrotta.

6.      Through this lawsuit, Del Val Media seeks the following relief, as more fully described below:  (a) temporary, preliminary and permanent injunctive relief enjoining and restraining Perrottta from violating her confidentiality and non-compete agreement, including prohibiting Defendant Perrotta from working with THM (or with any other company in violation of her non-compete agreement) and correspondingly enjoining and restraining THM from

2

employing Perrotta or otherwise tortiously interfering with Perrotta's confidentiality and non-compete agreement; (b) compensatory damages; and (c) punitive damages.

## THE PARTIES

7.     Plaintiff Del Val Media is a limited liability company organized under the laws of the State of New Jersey with a principal place of business located in Marlton, New Jersey.  Del Val Media does business in at least half of the counties in this District.

8.     Del Val Media has three members:  (1) managing member Edward McCartney, a resident of Voorhees, New Jersey; (2) managing member Gerry Haggerty, a resident of Medford, New Jersey; and (3) member Dennis Forchic, a resident of Park City, Utah.

9.     Del Val Media employs approximately 100 people as either employees or independent contractors in the tristate area, and has a coverage area of thirteen counties in the tristate area, including Philadelphia, Bucks, Montgomery, Chester, and Delaware counties in Pennsylvania; Camden, Burlington, Gloucester, Mercer, Middlesex, Somerset, and Hunterdon counties in New Jersey; and New Castle County in Delaware.

10.     Defendant Christina Perrotta is an individual residing in New Hope, Pennsylvania.

11.     Defendant THM is, upon information and belief, a limited liability company organized under the laws of the Commonwealth of Pennsylvania with an address of 199 Washington Street, in Doylestown, Pennsylvania.

12.     Upon information and belief, Thomas Balutis, an individual residing in Huntington Beach, California, is the sole owner, sole member, and publisher of THM.

3

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship between the parties and the amounts in controversy exceed $75,000.

14.     Del Val Media is a resident of the States of New Jersey and Utah.  Defendant Perrotta is a resident of the Commonwealth of Pennsylvania.  Defendant THM is a resident of either or both of the State of California and the Commonwealth of Pennsylvania, and its sole member is, upon information and belief, a resident of California.

15.     For the amounts in controversy, the relief sought herein will protect, from destruction or taking, substantial business relationships of Del Val Media, including approximately $100,000 annually in profits realized from the confidential information pertaining to the customers to which Perrotta had access during her employment with Del Val Media.

16.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District and each defendant is subject to the Court's personal jurisdiction with respect to this action.

## FACTS

17.     Del Val Media is a media and publishing company formed in 2004 which is in the business of creating, publishing, and distributing geographically targeted online and print lifestyle and category specific magazines in the tristate area.

18.     Del Val Media's publications are strategically distributed without a fee to specified and targeted homeowners based on geography, home values, and income levels.

19.     The life blood of Del Val Media's business – indeed its primary revenue source – is its customers, which are the advertisers who purchase space in its online and print magazines.

20.     Del Val Media currently publishes ten different magazine titles with over thirty zoned editions. Its most successful, highest revenue generating, magazine is its "House and Home" publication, which is distributed in this District.

21.     Del Val Media distributes "House and Home" to approximately 320,000 homes each month across thirteen counties in the tristate area, including in Philadelphia, Bucks, Montgomery, Chester, and Delaware counties in Pennsylvania; Camden, Burlington, Gloucester, Mercer, Middlesex, Somerset, and Hunterdon counties in New Jersey; and New Castle County in Delaware.

22.     Del Val Media purchased the "House and Home" publication from House and Home Magazine, Inc. ("HHM"), the magazine's previous owner, in or about June 7, 2012.

23.     As part of that purchase, Del Val Media acquired the goodwill of HHM together with the proprietary, confidential and valuable marketing, distribution, and sales information associated with "House and Home."

24.     Also in connection with the purchase, much of the staff that had worked for HHM joined the Del Val Media staff to continue working for House and Home in their former capacities.

25.     Among the individuals that made the transition from HHM to Del Val Media was Defendant Perrotta.

### Defendant Perrotta's Time at Del Val Media

26.     From the date she joined Del Val Media (on June 8, 2012) through the date on which she voluntarily quit (on August 30, 2015), Ms. Perrotta was a part of the sales team for House and Home.

27.     Ms. Perrottta's employment with HHM ended the day Del Val Media acquired House and Home and she began work for Del Val Media the following day.

28.     In this capacity, Ms. Perrotta was responsible for selling advertising space, providing consultative design and copy support to clients and for prospecting new advertising clients while recording all of her daily activity in the secure and password protected data base known as Magazine Manager.

29.     Like all others on the House and Home sales team, Defendant Perrotta was paid on a commission basis.

30.     Perrotta was a key sales executive and historically was a top five revenue producer for the all of Del Val Media not just the House and Home magazine.

31.     She was responsible for servicing, and worked directly with, some of Del Val Media's largest and most important clients, including its largest client, Sequoia Supplies.

32.     She would sell and solicit for advertising clients throughout the tristate area. Ms. Perrotta  called on clients and advertising prospects within the entire distribution footprint of House & Home Magazine which includes all thirteen tristate counties in which Del Val Media distributes magazines: Philadelphia, Bucks, Montgomery, Chester, and Delaware counties in Pennsylvania; Camden, Burlington, Gloucester, Mercer, Middlesex, Somerset, and Hunterdon counties in New Jersey; and New Castle County in Delaware.

33.     Defendant Perrotta serviced dozens of clients for Del Val Media each year.  The profits on such clients far exceeded $75,000 on an annual basis.

34.     In fact, during the portion of 2015 that Ms. Perrotta worked for Del Val Media, which does not include the highest volume fourth quarter, she generated over $275,000 in sales.

35.     In 2014 she generated nearly half a million dollars in advertising sales.

6

36.     In order to assist Perrotta and the rest of the sales team in their efforts, Del Val purchased, maintained, and made available a computer database and program, known as "Magazine Manager," which tracked daily sales activity including, but not limited to, detail and intimate data for both current and prospective clients' contact information that includes name(s,) office phone number(s), email(s) , personal cell phone number(s), best time and place to contact, client profile information on marketing strategies, budget(s) available both  past and future, seasonality and buying preferences, geographical target markets desired, ad copy and design preferences both past and future, prior ad campaigns results and performance feedback, specific and confidential pricing strategies and contract information, payment history, and advertising agency contacts and the specific details on these agreements between the client and advertising agency representing them.,

37.     None of this information is publicly available or generally known to the public, it was created over many years and at great expense to Del Val Media, and it gives Del Val Media a competitive advantage in the marketplace.

38.     The Magazine Manager is password protected and each member of Del Val Media's magazine sales staff, including Perrotta, only has access to the data related to their specific magazine database which would include all clients past and present and future prospect information.

39.     At the time she made the transition from HHM to Del Val Media, Perrotta was compensated on a commission basis, earning 15 percent on her sales.

40.     At or around the end of 2013, Defendant Perrotta approached Mr. McCartney, one of the managing members of Del Val Media, and requested an increase in her compensation.

7

41.     Mr. McCartney and Perrotta negotiated and agreed upon the terms of a new compensation package.

42.     As a result of these negotiations, Perrotta received an increase in her sales commission.

43.     In exchange for this added compensation, Perrotta agreed to and signed the confidentiality and non-compete agreement (the "Agreement") attached hereto as Exhibit 1. *See also* Exhibit 2, Perrotta Compensation Plan.

44.     Under the Agreement, Perrotta specifically acknowledged and agreed that during the course of her engagement with Del Val Media she would

> have access to information and materials that [Del Val Media] considers proprietary, confidential, and /or to contain trade secrets. Such information and materials may include lists, names, addresses, or other information regarding subscribers and/or advertisers with whom the company has or is considering a business relationship; future business plans; and financial and/or employee information. Employee understand that the foregoing is not an exhaustive list and that confidential information will also include any other information tor documents identified as confidential or proprietary or which Employee knows or has reason to know has such status. Furthermore, Employee understands that confidential information may be such regardless of whether such information or materials were furnished to the Company or developed in connection with or as a result of the Employee's performance of services for the Company, by Employee or otherwise.

45.     Also under the Agreement, Perrotta specifically acknowledged and agreed as follows:

> Employee agrees to treat all confidential information as strictly confidential; not to disclose it or allow it to be disclosed to anyone not having a need to know it on behalf of the Company, and in any event not to anyone outside of the Company's direct employ' not to use any confidential information expect as required in the performance of his/her/ duties for the Company; and not to move

confidential materials or information from the Company's premises where the Company is performing services, except as required in the performance of his/her duties for the Company, at all times during Employee's employment with the Company and thereafter.

46.     Perrotta also specifically agreed as follows:

During the Term, the employee and/or independent contractor shall not engage in any Competitive Activities.  For the purposes of this Agreement, the term 'Competitive Activities" shall mean and refer to any act or activity which, either directly or indirectly, aids, or assists the conduct of any business which is similar or related to the Direct Mail/Advertising Business (including, Lifestyle Magazines, SJ Magazine, Business to Business, Family Magazine, Home Resource Magazine, and Regional Websites,) whether as a proprietor, partner, investor, shareholder, director, officer, employee, principal, agent, independent contractor, advisor, or consultant.

For a period of one (1) year immediately following the termination of this Agreement, post employment shall not engage in any Competitive Activities within a 50-mile radius of any Del Val Media products in operation.

47.     As noted above, the Agreement specifically recited, and Defendant Perrotta acknowledged and agreed, that she would have access to Del Val Media's confidential and proprietary information which explicitly included, but was not limited to, information about actual and prospective subscribers and advertisers.

48.     Ms. Perrotta did in fact have access to Del Val Media's confidential and proprietary information.

49.     In exchange for her additional compensation, Ms. Perrotta specifically agreed to maintain the confidentiality of Del Val Media's confidential and proprietary information and she specifically agreed that, for a period of one year after the termination of her employment, she

9

would not compete directly against Del Val Media within fifty miles of any Del Val Media products in operation.

50.     To protect its confidential and proprietary information, Del Val Media executed similar confidentiality and non-competition agreements with the rest of its sales and marketing employees.

51.     Del Val Media performed its obligations under the Agreement, including giving Perrotta access to the tools and data she needed to perform her job which included the data in the Magazine Manager software program and paying her at the increased commission level.

### *Ms. Perrotta Breached the Agreement*

52.     On or about August 30, 2015, Ms. Perrotta unceremoniously quit her job at Del Val Media by email. *See* Exhibit 3, August 30, 2015 Email.

53.     Ms. Perrotta did not provide two weeks (or any other) notice before quitting, and she told a co-worker at Del Val Media that she had taken a job working for a travel magazine, which was false.

54.     In fact, and unbeknownst to Del Val Media at the time she resigned, Perrotta went to work for a direct competitor, THM, in the very same market she serviced for Del Val Media selling to the very same customers whose information she was duty bound not to use or disclose, all in violation of the Agreement, which she signed and for which she was compensated.

55.     Worse yet, Perrotta strategically timed her departure from Del Val Media.

56.     Advertising sales for "House and Home" result in yearlong contracts, and Del Val competes against a variety of other media outlets for a finite marketing budgets. Close to seventy percent of all House and Home sales are made in the last quarter for the upcoming year. This period, from October through December, is known as the "renewal season" because it is when

10

the majority of House and Home advertisers make decisions about where and how to spend their advertising budgets for the following year.

57.     Perrotta's departure at the start of the renewal season left the House and Home sales team down a person just as the renewal season got underway and permitted Perrotta to start immediately targeting Del Val Media's customers during the important renewal season. If she is not enjoined from targeting Del Val Media's clients in her service area, Del Val Media will be irreparably harmed in that it will lose relationships with its customer advertisers.

58.     To be sure, sales people like Defendant Perrotta are not easy to find, replace or train. This process can be very expensive and time consuming.

59.     In fact, this is the reason the Agreement includes a one year non-compete period, it is the period of time Del Val Media estimated it would take to find and train a replacement sales person and reassure its clients that the level of service they had come to expect would not change in Ms. Perrotta's absence.

### *David Perrino's Time with Del Val*

60.     On or about April 14, 2014, Del Val Media hired a gentleman by the name of David Perrino to join the House and Home sales team.

61.     As part of his original employment agreement with Del Val Media, Mr. Perrino agreed to and signed a confidentiality and non-competition agreement substantially similar to the one that Perrotta signed. *See* Exhibit 4, Perrino Agreement.

62.     Mr. Perrino was a productive member of the House and Home sales team.

63.     Like Ms. Perrotta, Mr. Perrino had access to all of the House and Home confidential and proprietary sales, customer, pricing, contract, sales lead, payment history, and renewal activity information.

11

64.     On or about October 16, 2015, Mr. Perrino quit his job at Del Val Media. See Exhibit 5, October 16, 2015 Email.

65.     THM specifically interviewed and attempted to hire Mr. Perrino, including making him an offer of employment. Ultimately, Mr. Perrino decided not to join THM and violate his confidentiality and non-compete agreement. But that did not stop THM from targeting him for employment in violation of his non-compete agreement.

66.     THM knew, or with any degree of diligence would have known, about Mr. Perrino's confidentiality and non-compete agreement.

### *Del Val Media Learns of its Former Employee's and THM's Unlawful Activities*

67.     In connection with the termination of Perrotta's and Perrino's employment, and in order to provide a seamless experience for Del Val Media's customers, a Del Val Media manager, Jim Romano, was assigned to monitor the former employees' work email accounts.

68.     On October 22, 2015, Mr. Perrino's work email address received a series of emails and attachments from Defendant Perrotta's personal email address and from the THM email address of its owner, Tom Balutis. *See* Exhibit 6, Emails and Attachments.

69.     The email chain that was sent to Mr. Perrino's former email address, which was clearly sent inadvertently, consisted of Perrotta and Balutis discussing launch and sales activities for THM. Among the topics mentioned by Perrotta in the email string was the targeting of Sequoia, Del Val Media's largest customer, with pricing that was to undercut Del Val Media's pricing.

70.     The email chain includes a number of attachments which indicate and confirm that THM is a direct competitor for Del Val Media's House and Home magazine. For example, the attachments show that THM is a strategically distributed magazine targeting substantially the

same geographic areas and demographic criteria used by Del Val Media with the same or similar business model. The topics covered by the magazine are also remarkably similar; both magazines revolve around luxury home improvements.

71.    Indeed, in her first email, and in direct violation of the Agreement, Perrotta asks her new boss, Balutis, for updated letterhead and pricing information so she can make a pitch to "a big client I had with House and Home" that she now intends to convert to a THM client.

72.    Learning of this information, Del Val Media, through its attorney, immediately sent cease and desist letters to Perrotta, Perrino, and Balutis and THM reminding the former employees of their confidentiality and non-compete obligations and informing THM of them while also demanding that the former employees cease competing against Del Val Media and return and promise not to use any of Del Val Media's confidential and proprietary information. *See* Exhibit 7, Cease and Desist Letters.

73.    In response to his cease and desist letter, Mr. Perrino advised that he chose not to pursue employment with THM but is instead going to work for a heating and air conditioning company performing services completely unrelated to the sales work he performed for Del Val Media. Del Val Media fully expects to resolve any issues with Mr. Perrino by way of Affidavit confirming his representations. *See* Exhibit 8, Affidavit of Joseph A. Martin, Esquire.

74.    Perrotta and THM and Balutis, on the other hand, have confirmed that Perrotta is working for, or soon will be working for, THM; that THM intends to employ Perrotta notwithstanding her obligations under the Agreement; and that Perrotta will be doing the very same job for THM that she did for Del Val Media in the very same territory. *See* Exhibit 8, Affidavit of Joseph A. Martin, Esquire.

13

75.    Defendants have openly admitted that Perrotta will be violating her obligations under the Agreement.

76.    The effect of Perrotta's violation, and THM's tortious interference with the Agreement, have already caused harm to Del Val Media.

77.    Since Ms. Perrotta's departure, the Del Val Media management team, including Mr. McCartney, have been making sales calls in an attempt to reassure and maintain Del Val Media's current clients and especially those that had been serviced by Perrotta and Perrino.

78.    Del Val Media's largest client, Sequoia, normally a responsive and regular client, has refused to return Del Val's overtures.  Del Val Media believes, and therefore alleges, that Perrotta and THM have already contacted and solicited Sequoia to compete for its business, in direct violation of Perrotta's obligations under the Agreement.

79.    Absent the injunctive relief requested herein, Defendants will continue to target Del Val Media's clients and will continue to harm Del Val Media and destroy its business relationships.

## CLAIMS

### Count I – Breach of Contract
### (Against Defendant Perrotta)

80.    Plaintiff repeats and incorporates by reference the above allegations as if set forth at length herein.

81.    Del Val Media and Perrotta entered into the confidentiality and non-compete agreement attached hereto as Exhibit 1.

82.    The Agreement reasonably and appropriately protects Del Val Media's legitimate business interest in protecting its confidential and proprietary information as well as the investment it made in the training and employment of Perrotta.

14

83.     The Agreement is reasonably limited in scope and duration. The scope covers only the geographic area serviced by Perrotta which is the area from which Del Val Media draws its customer base. The duration is limited to the time it would take Del Val Media to hire and train a replacement sales person for Perrotta.

84.     Perrotta specifically requested, negotiated and received an increase in her compensation in return for the Agreement.

85.     Del Val Media complied with its obligations under the Agreement.

86.     Perrotta materially breached the Agreement by going to work for a direct competitor within the one-year time limit and fifty-mile geographic limit of her Agreement and by using Del Val Media's confidential and proprietary information to compete with Del Val Media.

87.     In addition, Perrotta has, or will absent the injunctive relief requested herein, solicit Del Val Media's customers on behalf of herself and Del Val Media's competitor FHM and use Del Val Media's confidential and proprietary information to do so.

88.     As a direct and proximate result of Perrotta's breaches, Del Val Media has suffered both monetary harm and immediate irreparable harm and will continue to suffer such harm absent the injunctive relief requested herein.

89.     In particular, Del Val Media has suffered, and will continue to suffer, substantial loss of market share, prestige, customer relationships, and goodwill in its chosen geographic and product marketplaces.

15

## Count II – Tortious Interference with Prospective Economic Advantage
### (Against All Defendants)

90.     Plaintiff repeats and incorporates by reference the above allegations as if set forth at length herein.

91.     Del Val Media has as a reasonable expectation that its current advertisers will renew their advertising contracts during the final quarter of 2015 for placements in 2016 publications.

92.     Indeed, Del Val's clients have a history of doing just that.

93.     Defendants have or will interfere with Del Val Media's reasonable expectation by unfairly and maliciously and without justification using Del Val Media's confidential and proprietary information to compete unfairly against Del Val Media.

94.     In addition, Defendants have or will unfairly, maliciously, without justification, and in contravention of the Agreement, use Perrotta's relationships with Del Val Media's customers and prospective customers to solicit, interfere with, and take for themselves Del Val Media's clients.

95.     Perrotta's client and prospective client relationships are a direct result of her employment at Del Val Media.

96.     Del Val Media has suffered, and will continue to suffer absent the injunctive relief requested herein, both monetary harm and immediate irreparable harm as a result of Defendants' unfair and malicious interference.

16

## Count III - Unfair Competition
### (Against All Defendants)

97.     Plaintiff repeats and incorporates by reference the above allegations as if set forth at length herein.

98.     Despite knowledge of Perrotta's Agreement restricting her use of Del Val Media's proprietary and confidential information and limiting her ability to compete directly against Del Val Media within fifty miles of any Del Val Media properties for a period of one year, Defendants have undertaken to do just that.

99.     Defendants have and will use Del Val Media's confidential and proprietary information to compete against Del Val Media to sell advertising in THM, a magazine that competes directly against Del Val Media's House and Home publication.

100.    In addition, Perrotta has and will attempt to use the relationships she formed with Del Val Media's customers and prospective customers while employed there to compete against Del Val Media within Del Val Media's distribution areas.

101.    THM is knowingly directing Perrotta's actions and stands to gain as a result thereof.

102.    Defendants have already targeted Del Val Media's single largest client and caused that client to stop responding to Del Val Media's attempts to contact it during the renewal season.

103.    Defendants' use of these resources is an unfair and immoral business practice.

104.    Del Val Media has and will continue to suffer irreparable harm as a result of Defendants' unlawful acts.

105.    If allowed to continue, Del Val will also suffer monetary losses as a result of Defendants' unfair competition.

17

## Count IV – Tortious Interference with Contract
### (Against THM)

106.    Plaintiff repeats and incorporates by reference the above allegations as if set forth at length herein.

107.    Del Val Media has contracts with both Perrotta and Perrino.  *See* Exhibits 1, 2 and 4.

108.    These contracts are valid and binding on the parties thereto.

109.    Each of the contracts restricts the distribution and use of Del Val Media's confidential and proprietary information and also restricts Perrotta and Perrino from competing against Del Val Media within fifty miles of Del Val Media for a period of one year after the termination of their respective employment.

110.    THM is not a party to either of the Perrotta or Perrino confidentiality and non-compete agreements.

111.    Defendant THM has intentionally, maliciously, and without justification interfered with these contracts by encouraging and, in some cases, compensating or offering to compensate Perrotta and/or Perrino to engage in conduct in direct and material violation of their agreements with Del Val Media.

112.    As a direct and proximate result of THM's actions, Del Val Media has suffered, and will continue to suffer absent the injunctive relief requested herein, both monetary harm and immediate irreparable harm.

## Count V – Misappropriation of Trade Secrets
## (Against All Defendants)

113.    Plaintiff repeats and incorporates by reference the above allegations as if set forth at length herein.

114.    Del Val Media possesses and protects trade secret information such as lists of customer and prospective customer information including detailed contact, preference, and historical information specific to the customer's business dealings with Del Val Media.

115.    Ms. Perrotta acknowledged that Del Val Media possesses such trade secret information in her Agreement.  *See* Exhibit 1.

116.    This information provides Del Val Media a competitive advantage in the marketplace.

117.    This information is maintained and treated as secret by Del Val Media.

118.    Del Val Media protects its trade secret information with passwords and confidentiality agreements.

119.    The other individuals at Del Val Media with access to the same information as Ms. Perrotta had similar confidentiality agreements.

120.    Del Val Media also restricts and compartmentalizes internal access to its trade secret information.

121.    These lists and data are not generally known in the industry and not possible to reconstruct from legitimate or lawfully available sources.

122.    If competitors were able to obtain Del Val Media's trade secret information, they would be able to derive a competitive advantage thereby.

123.    Ms. Perrotta's Agreement required that she keep Del Val Media's information secret and not disclose it to any person or entity outside of Del Val Media.

124.    As described in more detail above, Defendants have knowingly taken Del Val

Media's trade secret information and used it to unlawfully compete against Del Val Media.

125.    As a result, Del Val Media has suffered, and absent injunctive relief, will continue

to suffer irreparable and monetary harm as a result.

126.    For example, Defendants have already managed to use Del Val Media's trade

secret information to disrupt Del Val Media's relationship with its largest client.

### Count VI – Conversion of Confidential and Proprietary Information
### (Against All Defendants)

127.    Plaintiff repeats and incorporates by reference the above allegations as if set forth

at length herein.

128.    In addition to its trade secret information, Del Val Media maintains a host of

confidential and propriety information.

129.    Ms. Perrotta specifically acknowledged as much in her Agreement. *See* Exhibit 1.

130.    Her Agreement recited the following categories of confidential and proprietary

information: "Such information and materials may include lists, names, addresses, or other

information regarding subscribers and/or advertisers with whom the company has or is

considering a business relationship; future business plans; and financial and/or employee

information." *See* Exhibit 1.

131.    Del Val Media does in fact maintain these categories of confidential and propriety

information.

132.    Del Val Media protects its confidential and propriety information by restricting its

internal and external distribution, using passwords and compartmentalizing access, and requiring

staff with access to sign confidentiality agreements.

133.   Ms. Perrotta promised to keep this information secret and not disclose it to anyone outside Del Val Media. *See* Exhibit 1.

134.   THM solicited Ms. Perrotta away from Del Val Media for the purpose of using Del Val Media's information to compete against it.

135.   Defendants have knowingly taken and used Del Val Media's confidential and proprietary information and used it for themselves and to compete against Del Val Media.

136.   As a result of Defendants actions, Del Val Media has suffered, and absent injunctive relief, will continue to suffer irreparable and monetary harm.

137.   For example, Defendants have already managed to use Del Val Media's confidential and proprietary information to disrupt Del Val Media's relationship with its largest client.

**WHEREFORE**, Plaintiff Del Val Media, LLC, hereby demands that the following relief be entered in its favor and against Defendants Christina Perrotta and TheHomeMag Philadelphia, jointly and severally:

1.   A judgment awarding compensatory and punitive damages;

2.   Entry of an Order imposing a constructive trust over any revenue received by Defendants from any clients Perrotta has solicited in violation of her confidentiality and non-compete agreement;

3.   Entry of an Order for temporary, preliminary and permanent injunctive relief as follows:

a.   Enjoining and restraining Perrotta from, directly or indirectly, violating her obligations under the Agreement, including enjoining and restraining Perrotta from competing with Del Val Media, using or disclosing Del Val Media's confidential and

21

proprietary information, working for any competitor of Del Val Media in Perrotta's restricted territory for a one-year period from the date of the Court's Order(s), and contacting any advertiser in Perrotta's restricted territory;

       b.      Enjoining and restraining THM from, directly or indirectly, employing or engaging Perrotta;

       c.      Requiring the Defendants to identify and return all confidential or proprietary information of Del Val Media and not to use or disclose any such information in the future;

       d.      Requiring the Defendants to identify all advertisers they have contacted;

       e.      Requiring the Defendants to account for and place in an escrow account all monies received from any advertisers at any time since THM began talking with Perrotta and Perrino;

       f.      Requiring the Defendants to make all of their computers and other devices and storage media available for inspection and copying by Del Val Media and its computer forensic consultant;

4.      Attorneys' fees;

5.      Costs of suit;

6.      Pre- and post-judgment interest; and

7.      Such other and further relief as the Court may deem just and/or equitable.

## DEMAND FOR JURY TRIAL

Under Federal Rule of Civil Procedure 38, Plaintiff, Del Val Media, LLC, demands a trial by jury for all issues so triable.